**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        lsironski@bursor.com

**SINDERBRAND LAW GROUP, P.C**.
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY DEBARI, JULIAN NAVA and TAYLOR-ANNE HARRIS, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br>  v.<br><br>WINIX GLOBAL LLC and WINIX AMERICA, INC.<br><br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Cory Debari, Julian Nava and Taylor-Anne Harris ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated, against Defendants Winix America, Inc. and Winix Global LLC ("Defendant" or "Winix").[1]  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is an action arising from the false and misleading representations that Defendant made for years about its Winix Models 6300, P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800, C535 and C545 HEPA air purifiers (the "Air Purifiers"), along with their respective replacement filters (collectively, the "Products").

2.     Specifically, Defendant represented that the Air Purifiers were equipped with "True" High Efficiency Particulate Air (HEPA) filters when in fact they were not.  Defendant also represented that the replacement filters it sells for the Air Purifiers are "True HEPA" filters when in fact they were not.

3.     Independent testing by Plaintiffs' counsel has shown that the filters used in the Air Purifiers and the replacement filters do not meet HEPA standards.

4.     Reasonable consumers have had no opportunity to find this out for themselves because they cannot conduct HEPA standard testing.

5.     Defendant knew this but continued hocking its wares, making a killing selling the Air Purifiers *and* replacement filters since the outset of the COVID-19 pandemic.  Defendant sold its Products through Costco and on Amazon.com, among other retailers.  In fact, some of the Air Purifier models were the only air purifiers sold in Costco stores throughout the entire COVID-19 pandemic – generating hundreds of millions of dollars of sales.

6.     Defendant has profited greatly from the explosion in the air purifier market brought about by the ongoing COVID-19 pandemic and yearly "once-in-a-lifetime" wildfires that have ravaged the United States.  Consumers are rightfully concerned about maintaining indoor spaces

[1] For purposes of this action, Defendants shall be treated and referred to as a singular entity: "Winix" or "Defendant."

that are free of harmful pathogens and contaminants.  As a result, a large portion of Defendant's gargantuan profits are attributable to the HEPA filtration claims that it falsely made about its Products.

7.     But for Defendant's HEPA claims, the fair value of its Air Purifiers would have been substantially lower (i.e., their market price would have been closer to non-HEPA air purifiers, which sell at a discount compared to air purifiers with HEPA filters).  Put differently, Defendant's HEPA misrepresentations allowed it to overcharge consumers in the amount of the HEPA-related price premium—assuming there would be a market for Defendant's non-HEPA filters at all.

8.     Relatedly, Defendant's false and misleading representations induced reasonable consumers like Plaintiffs into purchasing the Products.  Had Plaintiffs and all other similarly situated consumers known that—contrary to Defendant's knowing representations—the Products did not have HEPA filters, they would have paid less for the Products or not purchased them at all.

9.     Plaintiffs are now seeking a return of the HEPA-related premiums that Defendant charged for its Products, on behalf of themselves and other similarly situated purchasers.  Plaintiffs assert claims on behalf of themselves and all other similarly situated purchasers of Defendant's Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iv) fraud; and (v) unjust enrichment.

## **PARTIES**

10.     Plaintiff Cory Debari is a citizen of California, and resides in the city of Santa Rosa, California.  During the Fall of 2022, while in California, Plaintiff Debari purchased two Winix C535 Air Purifiers from Costco for about $130 each.   Plaintiff Debari reviewed and relied on Defendant's warranties and representations about the Products' HEPA filtration capabilities prior to purchasing the Products.  Specifically, Plaintiff Debari saw that the Products were labeled "True HEPA" on the box.

11.     Plaintiff Debari reasonably relied on Defendant's representations and believed that the Products had HEPA filters.  Had Defendant not warranted and represented that the Products

1   had HEPA filters, Plaintiff Debari would not have purchased the Products or would have paid

2   substantially less for them.

3        12.    Plaintiff Julian Nava is a citizen of California, and resides in the city of Arcata,

4   California.  In October of 2023, while in California, Plaintiff Nava purchased the Winix 5300-2

5   from Amazon.com for $150.   Plaintiff Nava reviewed and relied on Defendant's warranties and

6   representations about the Product's HEPA filter prior to purchasing the Product.  Specifically,

7   Plaintiff Nava saw that the Product was labeled "True HEPA" in the Amazon listing.

8        13.    Plaintiff Nava reasonably relied on Defendant's representations and believed that

9   the Product had a HEPA filter.  Had Defendant not warranted and represented that the Product had

10   a HEPA filter, Plaintiff Nava would not have purchased the Product or would have paid

11   substantially less for it.

12        14.    Plaintiff Taylor-Anne Harris is a citizen of California, and resides in the city of

13   Oakland, California.  In November of 2020, while in California, Plaintiff Harris purchased the

14   Winix C545 from Costo for $129.99.   Plaintiff Harris reviewed and relied on Defendant's

15   warranties and representations about the Product's HEPA filter prior to purchasing the Product.

16   Specifically, Plaintiff Harris saw that the Product was labeled "True HEPA" on the box.

17        15.    Plaintiff Harris reasonably relied on Defendant's representations and believed that

18   the Product had a HEPA filter.  Had Defendant not warranted and represented that the Product had

19   a HEPA filter, Plaintiff Harris would not have purchased the Product or would have paid

20   substantially less for it.

21        16.    Defendant Winix Global LLC is a California company with headquarters in Los

22   Angeles, California.  Defendant Winix America Inc. is an Illinois company with headquarters in

23   Bannockburn, Illinois.  Both of these Winix entities manufacture, distribute, advertise and sell the

24   Products.

25   ### JURISDICTION AND VENUE

26        17.    This Court has subject-matter jurisdiction over this action pursuant to the Class

27   Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which amends 28 U.S.C. §

28   1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a)

there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from the defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

18.     This Court has personal jurisdiction over Defendant Winix Global LLC because it was formed under the laws of California and has its principal place of business in Los Angeles, California.

19.     This Court has personal jurisdiction over Defendant Winix America Inc. because it markets and sells the Products in California.

20.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants transact significant business within this District; at least one Plaintiff resides within this District; and a substantial part of the events giving rise to at least one of the Plaintiffs' claims took place within this District.

**FACTUAL ALLEGATIONS**

**A.      Air Purifiers and the Air-Purifier Market**

21.     The Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States" in 2021 alone.  This pollution comes at great cost to human health: "[p]oor air quality is responsible for an estimated 100,000 premature deaths in the United States each year."  Exposure to air particulates has also been linked to symptoms of depression, cognitive decline, and increased feelings of anxiety.

22.     Air pollution can also be a visceral reminder of human-driven climate change: the smoke from wildfires that have raged across both coasts of the United States since 2020 has quite literally blocked out the sun and forced millions of people indoors.  For many, the smoke has exacerbated health conditions such as asthma or emphysema.

23.     As a result, public concern about air pollution is high.  In fact, one 2019 survey found that, of about 1000 responses, 43% of respondents indicated that they had a "great deal" of concern about air pollution in the United States and 31% indicated that they had a "fair amount" of concern about air pollution.  Taken together, 74% of respondents expressed concern about air

pollution.  This is in line with the EPA's concerns—the agency places indoor air pollution among the top five environmental health risks.

24.      Concern about air quality skyrocketed in 2020, however, as wildfires intensified and the airborne COVID-19 virus shut down the globe.

25.      As expected, consumer concern over airborne contaminants has helped the air-purifier market explode, from $8.05 billion in 2019 to $16.83 billion in 2024:[2] "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination.  Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."

26.      Air purifiers come in various forms.  Among the most effective purifiers are those with HEPA filters.  HEPA is an acronym for "High Efficiency Particulate Air."  HEPA filters are strictly designed and must adhere to certain specifications to be designated as HEPA.

27.      Specifically, a HEPA filter is a type of pleated mechanical filter that typically consists of sheets of randomly arranged fiberglass or plastic fibers held in an accordion shape by aluminum separators.  To be called a HEPA filter, the filter must capture at least 99.97% of dust, pollen, mold, bacteria, and any airborne particles with a sizes ranging from 0.1 to 0.3 microns.

---

[2] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022–2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited September 3, 2024).



**Figure 1:** *An Illustrated Example of a HEPA Filter*

28.     According to the Centers for Disease Control and Prevention (CDC), HEPA filters "are the most efficient filters on the market for trapping particles that people exhale when breathing, talking, singing, coughing, and sneezing."[3]

29.     For example, even though the SARS-CoV-2 virus is about 0.125 microns in diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including viruses, in a home or confined space."[4]

30.     The reason why consumers may care that the air purifier they purchase meets the HEPA standard is self-evident.  It offers near certain protection against the transmission of airborne

---

[3] CENTER FOR DISEASE CONTROL AND PREVENTION, Improving Ventilation in Your Home, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/improving-ventilationhome (last accessed September 3, 2024).

[4] *Id.*

pathogens in the home (if the purifier is given enough time to circulate the air), and it can also filter out pollution caused from events like wildfires, which are growing ever more frequent.

31.     Consumers want the assurance that the HEPA standard provides, and they are willing to pay more for HEPA filters, i.e., consumers are willing to pay a premium for filters that meet the HEPA standard. A review of current sales prices, across brands that sell both HEPA and non-HEPA filters (what marketers sometimes call "HEPA-type" purifiers), indicates that HEPA purifiers sell—on average—at a 41% premium to non-HEPA filters within the same brand:

### TABLE A

| Model | HEPA | | | Non-HEPA | | | HEPA premium |
|---|---|---|---|---|---|---|---|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | |
| Molekule | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holme | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |
| Crane | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| **Average premium:** | | | | | | | **41%** |

32.     Being able to make a 99.97% "HEPA-filtration" claim is thus a huge boon for manufacturers, and they know it.  The HEPA standard claim is a signal to consumers that the product they are purchasing has been constructed to exacting standards and is able to provide superlative levels of filtration.

33.     Accordingly, the phrase "True HEPA" is now ubiquitous in air purifier marketing, including Defendant. The reason for this is that the phrase carries weight.  It is a signal of quality to consumers—that the air purifier they are buying is of a high grade and worth more than purifiers that do not have a HEPA filter.  Though consumers may not know the filtration efficiency requirements of the HEPA standard, or the technicalities of the various HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling.  If having a HEPA filter was not material to consumers, then manufacturers like Defendant would not advertise the feature so heavily.  In fact, given consumer

preference for HEPA filters, there are few, if any, non-HEPA filters left on the market, i.e., there is little to no demand for filters that do not bear the HEPA designation.

34.     The materiality to consumers of HEPA representations is further confirmed by enforcement actions taken by regulators including the Federal Trade Commission, which has, among other things, entered into Consent Decrees with manufacturers of air purifiers for claims made about the efficacy of their HEPA purifiers and filters.  *See, e.g., In the Matter of Honeywell,* FTC File No. 962-3154.[5]

35.     Defendant's representation that its Products are "True HEPA" also carries greater significance to consumers—it communicates that there may be "false" or inauthentic HEPA filters out there, which Defendant assures consumers its Products are not.  The use of the term "True HEPA" is thus an affirmation by manufacturers like Defendant that a HEPA is a standardized term with prescribed qualities.

**B.     Defendant's Products and Advertising**

36.     At issue in this action are eleven models of Winix HEPA Air Purifiers, ten of which use the same "True HEPA" filter that is interchangeable between them (Filter A), and one "True HEPA" filter that is only applicable to a single model (Filter S).  Filter A models include: 6300, P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800 and C535 (Figure 1).  Filter S is only applicable to model C545 (Figure 2).  The various models have some unique features between them, but they are all substantially similar in that they either use Filter A or Filter S as a basis for their common HEPA claims.

---

[5] *Available at https://www.ftc.gov/legal-library/browse/cases-proceedings/962-3154-honeywell-inc-matter.*

1
2
3
4
5
6
7
8
9
10



**Figure 1**[6]

11
12
13
14
15
16
17
18
19
20
21

**Figure 2**[7]

22    37.    Defendant crafted common false and misleading HEPA representations on its

23  packaging and in advertising for each of the Products.

24

25  [6] https://www.winixamerica.com/product/filter-a-
26  115115/?_gl=1*1br7z22*_up*MQ..&gclid=CjwKCAjwreW2BhBhEiwAavLwfPoCIsMeJltL9brO
    wA9wyUaHvFrmXBR2y8thyWHOP_cZa8Fi3VYjJxoCcDcQAvD_BwE

27  [7] https://www.winixamerica.com/product/filter-s-1712-0096-
28  00/?_gl=1*ptu0mv*_up*MQ..&gclid=CjwKCAjwreW2BhBhEiwAavLwfPoCIsMeJltL9brOwA9
    wyUaHvFrmXBR2y8thyWHOP_cZa8Fi3VYjJxoCcDcQAvD_BwE

38.     For instance, Defendant made the following express representations in the advertising for Filters A and S (Figures 1 & 2):

    a.  True HEPA Filter.

    b.  Captures up to 99.99%* of airborne allergens including pollen, dust, smoke, pet dander, and other ultrafine particles as small as 0.003 microns.

39.     With respect the advertising and packaging of the Air Purifiers, Defendant made the following express and common representations for each of them:

    a.  True HEPA.

    b.  Captures 99.97% of particles / pollutants.

40.     Figures 3 and 4 below illustrate these express and common representations of the Air Purifiers on the packaging.



**Figure 3 – Winix Model C545**



**Figure 4 – Winix Model C535**

41.     Taken together, Defendant makes the same implied representation: that the filters used in the Air Purifiers had been tested and performed at or above the "HEPA" standards for filtration.  In reality, they had not.

**C.     Defendant's Products Are Tested And Fail To Meet HEPA Standards**

42.     As part of their investigation into the Products, Plaintiffs' counsel commissioned several highly reputable and independent American laboratories to conduct testing on Filters A and S.[8]  The results of the testing prove that Defendant's Products do not meet or exceed HEPA-grade.

43.     The labs chosen by Plaintiffs' counsel are often used by companies to validate their filters and are industry leaders in the rigorous and accurate testing of HEPA filters.  The labs are certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations.  Moreover, the labs are well known for their stringent adherence to the various HEPA testing protocols set forth by the European Union, the International Standards Organization, and the United States.

---

[8] The specific Winix models that were purchased for the test included the C535 (which uses Filter A) and the C545 (which uses Filter S).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44.     The testing was conducted in accordance with European and American testing protocols.  In America the protocol used to establish HEPA-grade is IEST-RP-CC001.7.  In Europe, the protocol used to establish claims above HEPA-grade (e.g., 99.99% removal at .003 microns as claimed by Defendant) is EN1822 test.  Both protocols test for a filter's ability to filter out fine particles but employ differing methodologies and naming conventions.

45.     The results of the EN1822 test are used to group filters into one of three classes: Efficient Particulate Air Filters (EPA), High Efficiency Particulate Air Filters (HEPA), and Ultra Low Penetration Air Filters (ULPA).  For purposes of the test, efficiency is defined as the filtration efficiency against the "most penetrating particle size."  Each class has subdivisions as well, depending on the filter's efficiency.  Thus, a filter tested under the EN1822 standard which could filter between 85% and 95% of particles at the most penetrating size would be classified as an EPA 10, or "E10" filter.  A filter which captures the most penetrating particles at a rate of 99.999995% would be categorized as a ULPA 17, or "U17" filter.  HEPA filters can be H13 (99.95%) or H14 (99.995%) before bumping up to the U15 class (99.9995% efficiency).

46.     The American IEST protocol is a bit more straightforward.  To be classified as a HEPA filter, the filter must have a filtration efficiency of <u>at least</u> 99.97%.  Particles ranging in size from 0.1 microns to 5.0 microns are used in the test.  The test is done over eight stages, with each stage measuring the filtration efficiency for a subset of particle sizes (i.e., measuring how the filter performs for particles between 0.1 and 0.2 microns).

47.     When Defendant's Filter A was tested under the EN1822 standard the results were shocking.  The filtration efficiency at the most penetrating particle size (0.0453 microns) was 93.480%, resulting in a grade of E10, the lowest possible.

48.     Filter A fared no better under the IEST-RP-CC001.7 standard.  At 0.3 microns the filter had an efficiency of 99.603%, well-below the HEPA standard.  The following charts show the full results of both tests.  The EN1822 results are on the left, the IEST results to the right.

**FILTER A (EN1822 Results)**

| Particle Size Range (µm) | Filtration Efficiency (%) |
|---|---|
| 0.0165 | 97.964 |
| 0.0190 | 97.574 |
| 0.0221 | 96.539 |
| 0.0255 | 95.050 |
| 0.0294 | 94.777 |
| 0.0340 | 94.381 |
| 0.0392 | 93.536 |
| **0.0453** | **93.480** |
| 0.0523 | 93.895 |
| 0.0604 | 94.510 |
| 0.0698 | 95.197 |
| 0.0806 | 96.042 |
| 0.0931 | 96.703 |
| 0.1075 | 97.176 |
| 0.1241 | 97.595 |
| 0.1433 | 97.774 |
| 0.1655 | 97.958 |
| 0.1911 | 98.142 |
| 0.2207 | 98.454 |
| 0.2548 | 98.520 |
| 0.2943 | 98.683 |
| 0.3398 | 99.037 |
| 0.3924 | 99.286 |
| 0.4532 | 99.569 |
| 0.5233 | 99.584 |
| 0.6043 | 99.665 |

**FILTER A (IEST-RP-CC-001.7 Results)**

| Particle Size Range (µm) | Filtration Efficiency (%) |
|---|---|
| 0.1 - 0.2 | **99.508** |
| 0.2 - 0.3 | **99.603** |
| 0.3 - 0.5 | 99.876 |
| 0.5 - 0.7 | 99.960 |
| 0.7 - 1.0 | 99.993 |
| 1.0 - 2.0 | 99.998 |
| 2.0 - 3.0 | 100.00 |
| 3.0 - 5.0 | 100.00 |

49.     Filter S was tested under the IEST protocol by the lab commissioned by Plaintiff's counsel.  The following results demonstrate that the filter never exceeded 98.79% removal at any of the tested particle ranges.   As such, Filter S is not HEPA-grade.

| Particles at: (in microns) | | | | Summed Data | |
|---|---|---|---|---|---|
| 0.10-0.15 | 0.15-0.20 | 0.20-0.25 | 0.25-0.30 | 0.10-0.20 | 0.20-0.30 |
| 1018946 | 441256 | 396516 | 190170 | 1460202 | 586686 |
| 27522 | 8364 | 7429 | 2293 | 35886 | 9721 |
| 97.30 | 98.10 | 98.13 | 98.79 | 97.54 | 98.34 |
| 97.29 | 98.10 | 98.12 | 98.79 | 97.51 | 98.30 |

**D.      But for Defendant's HEPA Misrepresentations, Plaintiffs and the proposed Classes would have paid less for their Air Purifiers.**

50.     By falsely claiming that its Air Purifiers had HEPA filters, and selling its replacement filters as HEPA, Defendant was able to overcharge Plaintiffs and the putative class members in the amount of a HEPA-related premium associated with those claims.

51.     Defendant's HEPA claims appeared on the packaging that its Winix Air Purifiers came in and appeared on the webpages where its products were sold.  Accordingly, those claims were seen by all purchasers of the Winix Air Purifiers and replacement filters.

52.     Defendant's HEPA claims misled reasonable consumers.  Defendant is one of the nation's leading air-purifier manufacturers, so consumers would reasonably believe Defendant's HEPA claims.  Moreover, consumers do not and cannot typically test the accuracy of a HEPA claim before purchasing an air purifier, and Defendant's HEPA claims were expressly false, not impliedly false.

53.     If Defendant had been truthful in its representations about the Products (i.e., that they were not HEPA grade), then the market price of those purifiers and filters would have been lower.

54.     Accordingly, Plaintiffs and the proposed Classes paid for Defendant's Products at artificially inflated prices.

## CLASS ALLEGATIONS

55.     ***Class Definition***.  Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of themselves and all other similarly situated consumers, and seek to represent a class (the "Nationwide Class") defined as:

> All natural persons in the United States who purchased a Winix 6300, P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800, C535 and C545 air purifier or replacement filter during the applicable statutory period.

56.     Plaintiffs also seek to represent a California subclass defined as follows (the "California Subclass"):

> All natural persons who purchased in California a Winix 6300,
> P300, 5300, 5500, 5300-2, 6300-2, AM90, C909, 9800, C535 and
> C545 or replacement filter during the applicable statutory period.

57.     The Nationwide Class and California Subclass are collectively referred to as the "Classes."  Excluded from the Classes are governmental entities; Defendant; and Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58.     Plaintiffs reserve the right to modify or expand the definition of the Classes to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

59.     ***Numerosity.***  Members of the Classes are so numerous that their individual joinder herein is impracticable.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery of Defendant's records.  Class members may be notified of the pendency of this action by mail, email, publication, and/or other media, including social media.

60.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

    a.   Whether the Products are in fact HEPA-grade;

    b.   Whether Defendant's express representations about the capability of the Products included false and/or misleading statements and/or omissions;

    c.   Whether Defendant knowingly made false HEPA claims about the Products;

    d.   Whether Defendant's representations were material;

    e.   Whether an objectively reasonable consumer would have been misled by Defendant's HEPA claims; and

    f.   Whether Defendant's HEPA claims allowed it to charge more for the Products than it otherwise could have.

61.     **Typicality.**  Plaintiffs' claims are typical of the claims of the proposed Classes because Plaintiffs, like all members of the Classes, were induced by Defendant's false and misleading warranties to purchase Defendant's Products without knowing that the Defendant's claims about the Products' filter were false and misleading.  The representative Plaintiffs, like all members of the Classes, have been damaged by Defendant's misconduct in the very same way as the members of the Classes.  Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

62.     **Adequacy**.  Plaintiffs are adequate representatives of the Classes they seek to represent because their interests do not conflict with the interests of the members of the Classes; they have retained counsel competent and experienced in prosecuting class actions; and they intend to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

63.     **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also represents a potential for inconsistent or contradictory judgments.  By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**Violations of California's Unfair Competition Law ("UCL")**
**Business & Professions Code § 17200, *et seq*.**

64.     Plaintiffs hereby incorporate by reference the allegations contained in all proceeding paragraphs of this complaint.

65.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass against Defendant.

66.     This claim is brought under the laws of California.

67.     Defendant violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

**The Unlawful Prong**

68.     Defendant engaged in unlawful conduct by violating the CLRA and FAL as referenced herein.

**The Fraudulent Prong**

69.     As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

70.     Defendant, as manufacturer and marketer of the Products, was in a position to know (and did know) the true quality and capability of its Products but affirmatively warranted that the Products had a greater purifying ability than they actually did.

71.     As a result of these false and misleading practices, Defendant induced Plaintiffs and the members of the Classes to purchase the Products that Plaintiffs and the class members would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

**The Unfair Prong**

72.     Defendant's conduct was unfair because, by claiming that its Products would purify 99.97% of airborne particulates, Defendant deceived consumers into believing that the Products' filters and replacement filters were HEPA-grade—a high standard for air purifying—even though they are not.  This is unfair because it led Plaintiffs and the members of the Classes to purchase the Products that they otherwise would not have, or would have paid substantially less for, had they not been advertised as "HEPA" or "True HEPA."  Defendant's misleading practice was also unfair because it gave Defendant an unfair advantage over competitors to the extent that Defendant's Air

Purifiers are among the best-selling air purifiers in the marketplace, doing millions of dollars in sales per month.

73.     The FTC has determined that false representations regarding the efficacy of HEPA air purifiers and filters constitute an unfair and deceptive trade practice.

74.     Plaintiffs and the Class and California Subclass members could not have reasonably avoided the injury.  Only Defendant was aware that its Air Purifiers did not possess HEPA filters.

***

75.      For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiffs and members of the Classes saw, read, and reasonably relied on Defendant's false and misleading warranties about the filtration capabilities of its Air Purifiers and replacement filters.  Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiffs', the Nationwide Class', and the California Subclass' purchasing decisions.

76.     Defendant's misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiffs and the members of the Classes.

77.     There was no benefit to consumers or competition from falsely claiming that the Products were of a quality that they were not.

78.     Plaintiffs and the members of the Classes have suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant advertised its Products truthfully.

**COUNT II**
**Violations of California's False Advertising Law ("FAL")**
**Business & Professions Code § 17500, *et seq.***

79.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-63 of this Complaint.

80.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass against Defendant.

81.     This claim is brought under the laws of California.

82.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or

disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or service, . . . or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

83.     During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by making false and misleading representations about its Products' filters being HEPA-grade to attract more purchasers than its Products would otherwise have received.  Likewise, Defendant's false advertising induced consumers to purchase the Products or pay more for the Products than consumers otherwise would have.

84.     Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' HEPA-grade filters were untrue and misleading.

85.     Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

86.     As a direct and proximate result of these acts, consumers have been and are being harmed, including Plaintiffs and the members of the Classes.  Plaintiffs and the members of the Classes have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiffs, and the members of the Classes would not have purchased Defendant's Products or would have paid substantially less for the Products had Defendant not advertised them as "HEPA" or "True HEPA"; (b) Plaintiffs and the members of the Classes paid an increased price for the Products based on this advertising; and (c) the Products did not confer the value they promised to confer because they did not actually contain HEPA filters.

87.     Plaintiffs, the Nationwide Class, and the California Subclass are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b) interest at the highest rate allowed by law; and (c) the payment of Plaintiffs' attorneys' fees and costs.

## COUNT III
### Violations of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*

88.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-63 of this Complaint.

89.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass against Defendant.

90.     This claim is brought under the law of California.

91.     Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

92.     Plaintiffs and members of the Nationwide Class and California Subclass are "consumers," as defined by Cal. Civ. Code § 1761(d).

93.     The Products purchased by Plaintiffs, the Nationwide Class, and the California Subclass are "goods" as defined by Cal. Civ. Code § 1761(a).

94.     The purchases by Plaintiffs, the Nationwide Class, and the California Subclass constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

95.     As alleged more fully above, Defendant has violated the CLRA by furnishing false and misleading statements about the quality and capabilities of its Products to attract and induce more consumers to purchase its Products than would have otherwise been induced and attracted to the Products without those false and misleading statements.

96.     As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

97.     Defendant's conduct was likely to deceive, and did deceive, Plaintiffs, the members of the Classes, all of whom are reasonable consumers.  Defendant knew or should have known through the exercise of reasonable care, that its claims about its Products' filtration capabilities were false and misleading.

98.     Defendant's representations about its Products' HEPA filter were intended to induce reliance, and Plaintiffs and the members of the Classes, read, and reasonably relied on the false and misleading affirmative representations when deciding to purchase Defendant's Products.

Defendant's deceptive conduct was a substantial factor in Plaintiffs' purchase decisions and the purchase decisions of the proposed Nationwide Class and California Subclass.

99.     Plaintiffs and members of the Nationwide Class and California Subclass have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

100.     In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiffs  sent written notice to Defendant on February 21, 2024, informing Defendant of their intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter expressly stated that it was sent on behalf of Plaintiffs and "all other persons similarly situated."  Defendant did not provide such relief.  Accordingly, Plaintiffs seek money damages under the CLRA to the fullest extent permitted.

<u>**COUNT IV**</u>
**Fraud**

101.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-63 of this Complaint.

102.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass.

103.     As alleged in detail above, Defendant misrepresented material facts about the Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

104.     Defendant was in a position to know (and did know) the true quality and capability of its Products, but it affirmatively warranted that the Products had HEPA filters, when in truth they did not.  In fact, Plaintiffs are informed and believe that Defendant knew through its own testing that its Products were not HEPA-grade, and were being falsely advertised as having HEPA filters.

105.     Defendant's misrepresentations, upon which Plaintiffs and the members of the Classes relied, were intended to induce, and actually did induce, Plaintiffs and the members of the Classes to purchase the Products.  Defendant induced Plaintiffs and the members of the Classes to purchase the Products that Plaintiffs and the members of the Classes would not have purchased, or would have paid substantially less for, had Defendant been truthful about the quality and capability of its Products.

106.     Defendant's fraudulent actions caused damages to Plaintiffs, the Nationwide Class, and the California Subclass, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
## Unjust Enrichment

107.     Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-63 of this Complaint.

108.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, alternatively, the California Subclass.

109.     As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had HEPA or "True HEPA" filters, despite knowing that they did not.

110.     Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

111.     Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

112.     Defendant either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Products would contain true HEPA filters. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

113.    Defendant's acceptance and retention of these benefits of the payments from Plaintiffs and the Classes under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Classes.

114.    Plaintiffs and the Classes are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

## COUNT VI
## Breach of Express Warranty

115.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-63 of this Complaint.

116.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass.

117.    As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products had "HEPA" or "True HEPA" filters, despite knowing that they did not.

118.    Defendant was in a position to know the true quality and capability of its Products but affirmatively warranted that the Products had HEPA filters, when in truth they did not.

119.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Classes through the purchase of the Products.  Defendant knowingly and willingly accepted and enjoyed these benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all members of the proposed Classes the following relief against Defendant:

(a)    An order certifying the Nationwide Class, and California Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the members of the Classes;

(b)    An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c)    Compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d)    Prejudgment interest on all amounts awarded;

1    (e)    Restitution and all other forms of equitable monetary relief;

2    (f)    An order requiring Defendant to undertake a corrective advertising campaign;

3    (g)    An order awarding Plaintiffs and the Classes their reasonable attorneys' fees and
            expenses and costs of suit; and

4

5    (h)    Granting such other and further relief as many be just and proper.

6                              **JURY TRIAL DEMANDED**

7    Plaintiffs demand a trial by jury on all claims so triable.

8

9    Dated:  September 19, 2024                **BURSOR & FISHER, P.A**.

10                                             By: ___*/s/ L. Timothy Fisher*_____
                                                         L. Timothy Fisher

11

12                                             L. Timothy Fisher (State Bar No. 191626)
                                               Luke Sironski-White (State Bar No. 348441)
13                                             1990 North California Blvd., 9th Floor
                                               Walnut Creek, CA 94596
14                                             Telephone: (925) 300-4455
                                               Facsimile: (925) 407-2700
15                                             E-mail: ltfisher@bursor.com
                                                       lsironski@bursor.com
16

17                                             **SINDERBRAND LAW GROUP, P.C**.
                                               Greg Sinderbrand (State Bar No. 179586)
18                                             2829 Townsgate Road, Suite 100
                                               Westlake Village, CA 91361
19                                             Telephone: (818) 370-3912
                                               E-mail: greg@sinderbrandlaw.com
20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am counsel for Plaintiffs, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiffs Rick Chen and Mindy Aiello reside in this District.

3.      Plaintiff Cory Debari is a resident of Santa Rosa, California.

4.      Plaintiff Julian Nava is a resident of Arcata, California.

5.      Plaintiff Taylor-Anne Harris is a resident of Oakland, California.

6.      Defendant Winix Global LLC is a California company with offices located in Los Angeles, California.

7.      Defendant Winix America Inc. is an Illinois company which sells the Products in California and this District.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on September 19, 2024, at Walnut Creek, California.


_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher